NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| APRIL ATKINS, <br><br> Plaintiff, <br><br> v. <br><br> CAPRI TRAINING CENTER, INC. d/b/a CAPRI INSTITUTE, and MUENSTER-SINTON, <br><br> Defendants. | Civil Action No. 2:13-cv-06820 (SDW) <br><br><br> **OPINION** <br><br><br> October 1, 2014 |

**WIGENTON,** District Judge.

Before this Court are Defendants Capri Training Center, Inc. ("Capri") and Anne. E. Muenster-Sinton's ("Muenster-Sinton") (collectively referred to as "Defendants") and plaintiff April Atkins's ("Atkins" or "Plaintiff") filings regarding the following six pending motions: 1) Motion to Conditionally Certify Collection Action and to Authorize Notice of Pendency and Consent to Join ("Motion for Conditional Certification"); 2) Motion to Dismiss, which was converted to one for Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) ("Motion for Summary Judgment"); 3) Cross Motion to Stay ("Motion to Stay"); 4) Motion to Strike Plaintiff's April 25, 2014 Notice of Supplemental Authority ("Motion to Strike"); 5) Motion to Strike Plaintiff's July 31, 2014 Notice of Supplemental Authority ("Motion to Strike II"); and 6) Cross Motion for Time to Conduct Discovery Pursuant to Rule 56(d) ("Cross Motion for Time to Conduct Discovery").

1

This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons set forth below, this Court **GRANTS** Defendants' Motion for Summary Judgment, **DENIES** the Cross Motion for Time to Conduct Discovery, and **DENIES** Defendants' Motions to Strike, Plaintiff's Motion to Conditionally Certify, and Defendants' Motion to Stay as moot.

**BACKGROUND AND PROCEDURAL HISTORY**

Capri is a for-profit corporation that includes beauty schools. (Compl. ¶ 10.) Atkins attended one of four New Jersey licensed beauty schools owned by Capri. (Compl. ¶ 9; Def. Br. 1.) Muenster-Sinton owned and controlled Capri Institute and the Capri Training Centers. (Compl. ¶ 71.) While she was a student, Atkins worked at Capri's clinic ("the Clinic") in Clifton, NJ, and provided services for paying customers in an effort to satisfy her statutorily required clinical training for a license in cosmetology. (Compl. ¶¶ 61, 66.) Atkins also performed "janitorial, clerical, [and] logistical functions that were essential and necessary" to the Clinic's continued operation. (Compl. ¶ 68(d); Defs.' Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Defs.' Facts") ¶ 15.) Atkins logged over 500 hours at the Clinic and did not get paid for services rendered. (Compl. ¶¶ 5, 66.) According to her academic record, Atkins attended class for 27.5 hours per week. (Defs.' Facts ¶ 16.) On August 3, 2012, Atkins completed the training program at Capri and obtained her New Jersey license to practice cosmetology. (Defs.' Facts ¶ 5.)

Atkins alleges that she and other students performing similar tasks are considered "employees" of Defendants under the Fair Labor Standards Act ("FLSA") and/or New Jersey

State labor laws, and are therefore legally entitled to wages for services provided. (*See generally* Compl. ¶¶ 4-5.)

*Procedural History*

On November 12, 2013, Atkins, individually and on behalf of similarly situated plaintiffs, commenced this action against Defendants. (Compl. ¶ 1.) On January 7, 2014, Plaintiff filed the Motion for Conditional Certification regarding the collection action and authorization notice of pendency and consent to join. (Dkt. No. 3.) On January 31, 2014, Defendants filed a Motion to Dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. (Dkt. No. 13.) On February 18, 2014, Defendants filed opposition and a cross motion to stay Plaintiff's Motion for Conditional Certification until the resolution of the then pending Motion to Dismiss. (Dkt. No. 17.) On April 25, 2014, Plaintiff filed a notice of supplemental authority in support of Plaintiff's opposition to Defendants' Motion to Dismiss. (Dkt. No. 25.) On May 15, 2014, Defendants responded by filing a Motion to Strike the supplemental authority. (Dkt. No. 26.) On June 10, 2014, this Court converted Defendants' pending Motion to Dismiss to one for summary judgment, and subsequently the parties filed additional briefs regarding the Motion for Summary Judgment. (Dkt. No. 30.) On June 24, 2014, Plaintiff filed opposition to the Motion for Summary Judgment and a Cross Motion for Time to Conduct Discovery. On July 7, 2014, Defendants filed opposition. On July 31, 2014, Plaintiff filed a notice of additional supplemental authorities, and on August 8, 2014, Defendants filed the Motion to Strike II to strike the supplemental authority submitted on July 31, 2014. On August 12, 2014, Plaintiff's filed opposition to the Motion to Strike II, and on August 26, 2014, Defendants filed a reply to that motion.

**LEGAL STANDARD**

*Motion for Summary Judgment (Upon Conversion from Motion to Dismiss)*

Pursuant to Federal Rule of Civil Procedure 12(d) "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The court has complete discretion to accept such materials beyond the pleadings. *See In re Kiwi Intern. Air Lines, Inc.*, 344 F.3d 311, 315 n.3 (3d Cir. 2003); Wright & Miller, Federal Practice and Procedure: Civil 2d § 1366, at 491 (1990). However, should it so choose, the court is required to convert the motion to one for summary judgment and provide the parties notice and a reasonable opportunity to present all relevant material. *See, e.g., In re Rockefeller Ctr Properties Sec. Litig.*, 184 F.3d 280, 287-89 (3d Cir. 1999); *Rose v. Bartle*, 871 F.2d 331, 339-43 (3d Cir. 1989).

Summary judgment is appropriate where the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The dispute is not "genuine" if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

The moving party bears the burden to prove that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "The nonmoving party must go beyond the pleadings and, by affidavits or other evidence, designate specific facts showing that there is a genuine issue for trial." *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 447 (D.N.J. 2009) (citing *Celotex,* 477 U.S. at 324); Fed. R. Civ. P. 56(e). "Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972)(internal citations omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23.

*Conditional Collective Action Certification*

The Third Circuit has stated that "conditional certification is not really a certification. It is actually the district courts exercise of [its] discretionary power, upheld . . . to facilitate the sending of notice to potential class members, and is neither necessary nor sufficient for the existence of a representative action under [the] FLSA." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d 2012) (internal citation and quotation marks omitted); *Adami v. Cardo Windows, Inc.*, CIV. 12-2804 JBS/JS, 2014 WL 320048 at *7 (D.N.J. Jan. 29, 2014); *Symczyk v. Genesis HealthCare Corp.,* 656 F.3d 189, 194 (3d Cir.2011).

A motion for conditional certification need not be ruled on immediately. *See generally Goldman v. RadioShack Corp.*, CIV.A. 2:03-CV-0032, 2003 WL 21250571 (E.D. Pa. Apr. 16, 2003). When a court is faced with the task of ruling on multiple motions, in the name of administrative efficiency, the court may first address other pending motions before ruling on a motion for conditional certification. *Beery v. Quest Diagnostics, Inc.*, 12-CV-00231, 2013 WL 3441792 (D.N.J. July 8, 2013) (declining to rule on a motion to conditionally certify a collection action until the pending motion to dismiss was resolved).

*Motion to Stay*

"[A] court has the discretion to stay a case if the interests of justice so require." *Forrest v. Corzine*, 757 F. Supp. 2d 473, 476 (D.N.J. 2010) (citing *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)). However, the stay of a civil case is an extraordinary remedy, which requires the court to balance competing interests. *Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp. 2d 535, 541-42 (D.N.J. 2008) (citing *Landis v. N. American Co.*, 299 U.S. 248 (1936)); *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998) (citations omitted). "The court should consider whether the stay would prejudice the non-moving party and if it would further

the interest of judicial economy." *Hass v. Burlington Cnty,* No. 08-1102 (JHR), 2009 WL 4250037 (D.N.J. Nov. 24 2009)(citing *Chiorazzo*, 529 F. Supp. 2d at 542 (denying the motion to stay, concluding that the plaintiff would be prejudiced)). Additionally, the burden is on the moving party to "make out a clear case of hardship or inequity in being required to go forward . . . ." *Landis*, 299 U.S. at 255; *CTF Hotel Holdings, Inc. v. Marriott Intern., Inc.*, 381 F.3d 131, 139 (3d Cir. 2004) ("The [moving] party must state a clear countervailing interest to abridge a party's right to litigate.").

*Motion for Additional Discovery Pursuant to Rule 56(d)*

"By its very nature, the summary judgment process presupposes the existence of an adequate record; therefore, the Supreme Court has explained that 'any potential problem with . . . premature [summary judgment] motions can be adequately dealt with under Rule 56([d])." *Interstate Outdoor Adver. v. Zoning Bd. of the Twp. of Cherry Hill*, 672 F. Supp. 2d 675, 677 (D.N.J. 2009) (quoting *Catrett*, 477 U.S. at 326)); *Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Federal Rule of Civil Procedure 56(d) sets forth the procedure for a party who believes that additional discovery is necessary before he can respond to a motion for summary judgment. Rule 56(d) states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). The motion must be accompanied by a supporting affidavit specifying "'what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" *Pennsylvania Dep't of Pub. Welfare v.*

7

*Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988)); *see also McKenna v. Healthease, Inc.*, -- Fed. App'x -- (3d Cir. July 15, 2014) (stating that a Rule 56(d) motion must state with *specificity* what information is being sought); *Interstate Outdoor Adver.*, 672 F. Supp. 2d at 677 ("[T]he party requesting a continuance must first demonstrate how that discovery will create a genuine issue of material fact.").[1]

**DISCUSSION**

This Court will address each of the pending motions below.

*Motion for Additional Time for Discovery*

As an initial matter, this Court will first address the Cross Motion for Time to Conduct Discovery. As a general rule, a "court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Dowling,* 855 F.2d at 139-40. However, a court may deny such motions for discovery when the material sought would not be useful or the requests are vague. *See Duran v. Warner*, No. 07-5994 (JBS), 2013 WL 4483518, at *5 (D.N.J. Aug. 20, 2013) (denying a continuance pursuant to Rule 56(d) when "[p]laintiff's overbroad and vague requests [were] not tailored to reveal any particular information" relating to defendant's conduct, and were "more akin to a fishing expedition designed to delay litigation"); *Yocham v. Novartis Pharm. Corp.*, 736 F. Supp. 2d 875, 879-880 (D.N.J. 2010) (rejecting a motion for further discovery because the plaintiff failed to explain how the information sought would be useful to oppose defendant's motion for summary judgment).

---

[1] Rule 56(d) was formerly Rule 56(f). *See Superior Offshore Intern., Inc. v. Bristow Grp., Inc.*, 490 Fed App'x 492, 501 (3d Cir. 2012).

In the instant matter, Plaintiff requests a wide range of documents including, for example, those related to the policy at Capri "requiring students to perform services on members of the public in a salon setting"; the "policy of charging customers"; services offered; accounting documents regarding profits and expenses incurred; "other" tasks "students were required to perform in order to graduate"; the policy regarding "prohibiting students from practicing cosmetology services on anyone but paying salon customers"; and the number of hours each student worked. (Pl.'s Cross Mot. 15-16.) Additionally, Plaintiff also requested the following:

> • Documents and/or testimonial evidence relating when, why, and to what extent defendants implemented the policy of requiring students to perform menial tasks unrelated to those skills required to pass the state cosmetology exam or to practice cosmetology in a beauty salon;
> • Documents and/or testimonial evidence describing when and why defendants implemented the policy of requiring students to purchase their own equipment to use in defendants' salons;
> • Documents and/or testimonial evidence providing additional insight regarding the relationship between defendants [and] their students; and
> • Documents and/or testimonial evidence regarding defendants' purported "business" of training students to practice cosmetology, including any evaluations thereof.

(*Id.* at 16.)

In total, Plaintiff included seventeen bulleted categories of materials (referring to approximately 38 types of documents) in her request for discovery, which contains significant overlap. As Defendants point out, several of the requested documents pertain to information Plaintiff already has in her possession (such as what services students were required to perform).

Plaintiff's vague and/or overbroad requests for documents are not sufficient for this Court to grant additional time for discovery. *See Malouf v. Turner*, 814 F. Supp. 2d 454, 459-61 (3d Cir. 2011) ("Vague or general statements of what a party hopes to gain through a delay for discovery under Rule 56(d) are insufficient." (citation omitted)). Further, Plaintiff has not demonstrated that the information she seeks would support her claim. *Atlantic Deli & Grocery v. United States*, No. 10-4363 (JBS/AMD), 2011 WL 2038758, at *3-4 (D.N.J. May 23, 2011) (denying Rule 56(d) motion when the evidence sought was within the plaintiff's possession, and even information held by the defendant would not help in opposing summary judgment). Most of the documents requested simply are not relevant to this Court's inquiry in this matter. *See generally Taylor v. Hughes*, 548 Fed. Appx. 822, 825 (3d Cir. 2013).

Additionally, the remainder of Plaintiff's requests seek to support theories which were not articulated in Plaintiff's Complaint, and thus would not impact the outcome of this suit. This Court will not allow a fishing expedition for items not relevant to the analysis required in the present matter. Plaintiff's motion papers and submitted declaration do not provide an adequate connection or explanation of how the discovery requested will support the allegations and theories raised in the Complaint. As such, Plaintiff's request for additional time for discovery will be denied.

There is no genuine issue of material fact in dispute to preclude summary judgment. As will be discussed below, even if Defendants did receive some profit, Plaintiff has not met the necessary factors under the economic reality test or shown that the primary benefit of the relationship was to Defendants. *See generally Haybarger v. Lawrence Cnty. Adult Prob. & Parole,* 667 F.3d 408 (3d Cir. 2012); *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 525 (6th Cir. 2011); *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005).

Next, the substantive matters before this Court regarding the Motion for Summary Judgment will be addressed.

*State Regulation of Cosmetology / Hairstyling Licensure*

Generally, under New Jersey law, an individual may only render cosmetology or hairstyling services if he or she is licensed to do so. N.J. Stat. Ann. § 45:5B-7. To obtain a license to practice cosmetology or hairstyling, an individual must attend one of New Jersey's licensed beauty schools. *See id.* These beauty schools are regulated by the New Jersey State Board of Cosmetology and Hairstyling (the "Board").[2] *See id.* The Board statutorily mandates students who are seeking licensure in cosmetology or hairstyling to complete a 1,200-hour course. (Defs.' Br. in Supp. of their Mot. to Dismiss ("Defs.' MTD Br.") 1.) The Board requires that 849 of the 1,200 hours be in a clinical setting. (*Id.*) This clinical setting (a "clinic") is defined as "a designated portion of a licensed school in which members of the general public may receive cosmetology and hairstyling services from registered students in exchange for a fee which shall be calculated to recoup only the cost of materials used in the performance of those services." N.J. Stat. Ann. § 45:5B-3(h).

These clinics operate under very specific rules. *See* N.J. Stat. Ann. § 45:5B-14. For example, clinics must expressly disclose to potential customers that they are beauty school clinics and, accordingly, may not "[a]dvertise [or] operate … under another's name or trade name." N.J. Stat. Ann. § 45:5B-14(b). In fact, "any school performing clinical work shall display in a conspicuous place in the waiting room and senior room a sign readily visible and legible, stating: SERVICES DONE HERE BY SENIOR STUDENTS ONLY." N.J. Admin. Code 13:28-6.27(a). "Senior Students," defined by the Board as students who have completed at least 600 of the 1,200 required hours for obtaining licensure, are exceptions to the general rule

---

[2] Capri is also accredited by the National Accrediting Commission of Career Arts & Sciences.

that only licensed individuals may render cosmetology or hairstyling services to the general public. N.J. Stat. Ann. § 45:5B-7(f). Only Senior Students may provide services to customers at clinics. *Id.* Accordingly, teachers, students who have not attained the rank of Senior Student, and other professional cosmetologists cannot provide services at clinics. *See id.* Senior Students may only provide services "from Monday to Saturday" and "during hours that do not conflict with scheduled classes." N.J. Admin. Code 13:28-6.27(e)-(f). For each service performed, Senior Students receive credits towards graduation, and ultimately, licensure in cosmetology.[3] (Defs.' Facts ¶ 9.) Furthermore, clinics are required to employ "a minimum of one licensed teacher for every clinic area attended by up to 25 senior students" to ensure that the students are practicing in a safe environment. N.J. Admin. Code 13:28-6.23(a)(1).

*Whether an Employee / Employer Relationship Exists*

The FLSA is the federal statute that regulates employment and fixes a minimum wage that employers must pay employees. 29 U.S.C.A. § 201 et seq. Whether a trainee, apprentice, student or learner is entitled to minimum wages turns on whether they were considered "employees" under the FLSA. *See generally Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290 (1985); *Walling v. Portland Terminal Co.*, 30 U.S. 148 (1947). The determination of whether an individual should be classified as an employee for purposes of the FLSA is a question of law. *Todaro v. Twp. of Union*, 27 F. Supp. 2d 517, 533 (D.N.J. 1998). The FLSA defines the term "employ" as "suffer or permit to work" and merely defines the term "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e),(g). Because the FLSA and New Jersey State labor laws use the same definitions of "employ" and "employee," Plaintiff's federal and state claims rise and fall together. *See* N.J. Stat. Ann. § 34:11-56a1(f),(h); *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147-48 (3d Cir. 2014). Accordingly, the same analysis

---
[3] Defendants in this matter claim the Clinic is not a for profit salon business. (*See* Defs.' SJ Br. 14).

12

can be used to determine whether an individual is considered an "employee" under the FLSA or New Jersey labor laws. *Rong Chen v. Century Buffet & Rest.*, No. 09-1687 (SRC), 2012 WL 113539 at *2-3(D.N.J. Jan. 12, 2012) ("The definitions for "employer" and "employee" under the FLSA and [New Jersey Wage and Hour Law] are virtually identical."); 29 U.S.C. § 203(d)(e); N.J.S.A. § 34:11–56a1(g),(h).

Although the other circuits vary in their treatment of the required analysis for trainees/students,[4] the Third Circuit has utilized the "economic realities" test to assess the existence of an employer/employee relationship under the FLSA. *See Todaro*, 27 F. Supp. 2d at 534; *Davis v. Abington Mem'l Hosp.*, 817 F. Supp. 2d 556 (E.D. Pa. 2011) (denying summary judgment when considering the meaning or employees versus volunteers); *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 418 (3d Cir. 2012) (addressing definition of "employer" under the FLSA and the application of the economic reality test); *Krause v. Cherry Hill Fire Dist. 13*, 969 F. Supp. 270, 274 (D.N.J. 1997) (discussing the economic realities test regarding prior employees volunteer fire fighters and finding plaintiffs were employees; however, noting that the economic realities test is of little guidance in distinguishing volunteers from employees).[5] The Third Circuit has declined to extend this test to volunteers, and has not

---

[4] *See, e. g., Velez v. Sanchez*, 693 F.3d 308, 330 (2d Cir.2012) (considering the primary recipient of benefits in the FLSA context); *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 525 (6th Cir.2011) ("[T]he ultimate inquiry in a learning or training situation is whether the employee is the primary beneficiary of the work performed."); *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005) (finding students' chores at boarding school were not work where they "were primarily for the students' . . . benefit"); *McLaughlin v. Ensley*, 877 F.2d 1207, 1209 (4th Cir. 1989) ("[T]he general test used to determine if an employee is entitled to the protections of the Act is whether the employee or the employer is the primary beneficiary of the trainees' labor.")).

[5] Despite the DOL's efforts and guidelines, courts have not developed or utilized a uniform test to determine whether a person is an "employee" under the FLSA. Therefore, other courts also seek guidance, in determining whether an individual qualifies as an employee, from the Department of Labor's Wage and Hour Administrator ("WHA"). The WHA applies a six factor test—supposedly derived from *Walling v. Portland Terminal*—to determine whether a trainee qualifies as an employee under the FLSA (all factors must apply in order for individual not to be considered an employee):

> (1) the training even though it includes actual operation of the facilities of the employer is similar to that which would be given in a vocational school;

spoken on whether the economic reality test applies to trainees/students. *See Todaro*, 27 F. Supp. 2d at 534.

Under the economic realities test, an employer/employee relationship exists if, as a matter of economic reality, the entity functions as the individual's employer. *See Todaro*, 27 F. Supp. 2d at 533-34; 51B C.J.S. Labor Relations § 1236. Courts should look to the economic realities of the particular work environment and assess whether the alleged "employee" is economically dependent upon the alleged "employer" for his livelihood. *Davis*, 817 F. Supp. 2d at 563; 51B C.J.S. Labor Relations § 1236. Furthermore, a finding that the individual is dependent upon a particular business or organization for his continued employment strongly suggests that an employee/employer relationship exists. *See Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1385 (3d Cir. 1985). Throughout the assessment, courts should focus on the totality of the circumstances. *Haybarger*, 667 F.3d at 418. Therefore, the assessment should be grounded on economic reality, the underlying economic facts, and practical considerations rather than technical concepts, legal classifications, or labels that the individual parties may have attached to their relationship. *See id.*; 51B C.J.S. Labor Relations § 1236.

Several factors have been considered when determining whether an employer/employee relationship exists under the economic realities test. These factors can include, for example,

---

(2) the training is for the benefit of the trainees;
(3) the trainees do not displace regular employees, but work under close observation;
(4) the employer that provides the training derives no immediate advantage from the activities of the trainees, and on occasion his operations may actually be impeded;
(5) the trainees are not necessarily entitled to a job at the completion of the training period; and
(6) the employer and the trainees understand that the trainees are not entitled to wages for the time spent in training

*Kaplan v. Code Blue Billing & Coding, Inc.*, 504 Fed. App'x 831, 834-35, n.2 (11th Cir. 2013) (citing Wage and Hour Div., U.S. Dep't of Labor, Fact Sheet No. 71: Internship Programs Under the Fair Labor Standards Act 1 (2010)); *see also Donovan v. Am. Airlines, Inc.*, 686 F.2d 267, 273 n.7 (5th Cir. 1982). *But see Solis*, 642 F.3d at 525 (6th Cir. 2011) (declining to apply WHA's six factor test in training or educational setting because it is "overly rigid and inconsistent with a totality-of-the-circumstances approach," and instead utilizing a primary benefits test).

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business . . . . Courts have repeatedly emphasized that this list is neither definitive nor exclusive. The presence or absence of any of the factors is not in and of itself dispositive.

*Todaro*, 27 F. Supp. 2d at 534 (citing *DialAmerica*, 757 F.2d at 1382)[6]; *see generally Haybarger*, 667 F.3d at 418. Notably, the Third Circuit has not directly addressed the applicability of the before mentioned factors in the context of whether students or trainees may be considered employees under the FLSA. This Court utilizes the economic realities test for its analysis, focusing on the totality of the circumstances and the economic facts.[7]

Plaintiff puts forth two main arguments for why an employer/employee relationship exists between she and Capri. First, Plaintiff alleges that she is an employee under the FLSA because (1) Capri is "a for-profit enterprise [] where [Plaintiff's] labor is essential" to its operation and (2) the Clinic actually makes a profit. Despite Atkins's argument, profitability alone, or lack thereof, is not determinative when assessing the existence of an employer/employee relationship under the economic realities test.

In this matter, Capri claims that the gross revenue generated by the Clifton area Clinic totaled $41,416 during the 2012 fiscal year, and that amount does not include "cost of hair, nail,

---

[6] Additionally, the *Todaro* court went on to state that "it is important to note that the factors outlined above have not been developed for the purpose of distinguishing employees from volunteers, but rather are intended to measure and balance the competing economic realities involved in an employee/independent contractor distinction. The economic realities test presupposes a real economic exchange between the parties, and therefore is not as useful when attempting to distinguish volunteers from employees, where "there is no economic relation to measure." *Todaro*, 27 F. Supp. 2d at 534 (internal citations and quotation marks omitted).

[7] This Court does recognize that under an analysis of the factors listed, Plaintiff would not be able to succeed at this juncture. Additionally, even under a primary benefit analysis, which may consider similar issues to the factors reviewed under the economic realities test, Plaintiff still would not be considered an employee under the FLSA.

face, body, or other products, nor does it take into account the cost of salaries for required supervision in the Clinic, rent, utilities, etc." (Declaration of Anne E. Muenster ("Muen. Decl.") ¶ 18; Defs.' Facts ¶ 10.) Further, the Clifton area Clinic alone employed a total of fourteen instructors and one student teacher. (Defs.' Facts ¶ 10.) According to Defendants, three of these instructors were primarily assigned to assist students working at the clinic, and their combined salaries for the 2012 fiscal year totaled $80,522. (*Id.*) As a result, Defendants argue that there was no profit made on the Clinic. However, even assuming that there was a profit, given the circumstances and the licensing requirements, the primary benefit of student training in the Clinic is to the student, here Plaintiff. These students are not economically dependent on the school, did not expect a job with the school or degree of permanence, and had no expectation of being paid. However, the students require hands on supervised training for licensing in their field.

Capri's clinical program is not an entity that exists primarily for the creation of profit. *See* N.J. Admin. Code § 13:28-6.29; N.J. Stat. Ann. § 45:5B-3(h) (stating that "the general public may receive cosmetology and hairstyling services from registered students in exchange for a fee which shall be calculated to recoup only the cost of materials used in the performance of those services"). Plaintiff essentially alleges that Defendants are not in compliance with the statutory limits and restrictions. (*See* Compl. ¶ 55 (stating that "Defendants have made a conscious decision to charge a fee to the public for defendants' salon personal services business that exceeds the costs of the materials consumed.")) Even if Plaintiff is correct, and Defendants were charging more for their services than the cost of materials, an employee/employer relationship is still absent from the equation. *See Walling*, 330 U.S. at 153 (where the court did not foreclose an employer from gaining any benefit from the trainee's work; rather, the Supreme Court stated that

16

"[t]he FLSA was not intended to penalize [employers] for providing . . . instruction at a place and in a manner which would most greatly benefit the trainees"). If Defendants were making a profit from the Clinic services, Defendants may be violating the Board's regulations; but the existence of profitability, in and of itself, would not create an employer/employee relationship. Rather, the economic realities test focuses on dependency, the expectation of continued work, and a common sense view of the underlying facts and circumstances.

Second, Atkins argues that she should be considered an "employee" because Capri, not herself, was the primary beneficiary of her labor. Atkins alleges this, in part, because the Clinic required her to perform "janitorial, clerical, [and] logistical functions" that actually "hindered [her] educational goals." (Compl. ¶ 68(d); Defs.' Facts ¶ 15.) These duties included washing and folding towels, sweeping floors, cleaning equipment, and attempting to sell cosmetology products to customers. (Pl. Opp. to Summ. J. 12-14.) Atkins further points to the fact that "defendants required salon workers . . . to perform whatever services a paying customer ordered, regardless of her educational needs and regardless of whether the student worker needed any additional practice on the procedure" as proof that the Clinic was not operating for the benefit of the students. (*See id.*)

Overall, this Court finds Atkins's argument unpersuasive. The purpose of the Clinic is to mimic a real beauty salon. The statutorily-mandated clinical program allows students to train under the instruction of a professional in a safe environment while affording students the chance to gain the experience and skills needed to succeed after graduation. The duties that Atkins was required to perform at the Clinic are the same sorts of duties she may have to perform in a regular salon, and she has not argued to the contrary. In fact, Atkins herself attests to the fact that these duties were "essential and necessary" to the Clinic's continued operation. (*See* Compl. ¶

68(d).) Thus, these "janitorial, clerical, [and] logistical functions" may actually further the educational goals of the clinical program, the Board, and Atkins herself, by providing training for "essential and necessary" duties. Similarly, the claim that Atkins had to perform whatever services a paying customer ordered seems to further the goals of the Clinic and training students.

The application of the economic realities test, in the immediate case, indicates that Plaintiff is not considered an "employee" under either the FLSA or New Jersey State labor laws. Considering the totality of the circumstances, it is clear that Plaintiff did not depend on Capri for either her livelihood or continued employment particularly since Plaintiff was not paid for her work at the Clinic. Additionally, the statutory scheme within which clinics must operate, including Defendants' Clinic, prevents the creation of an employer/employee relationship. Plaintiff trained at the Clinic with the understanding that their relationship was strictly temporary because only individuals who are considered Senior Students, and not those who have obtained their license in cosmetology, are legally allowed to work at the Clinic. Further, students were not guaranteed employment at Capri and Plaintiff has not alleged otherwise. The economic reality of the situation, along with the statutory scheme in which the Clinic operates, demonstrates that Plaintiff was merely a student trainee who was required, by statute, to hone her soon-to-be professional skills at a clinic. As a student, Plaintiff was not entitled to coverage under the FLSA[8] and Plaintiff is not entitled to wages for services performed at the Clinic.[9] Accordingly, this Court finds that no employer/employee relationship existed between Plaintiff and Defendants under either the FLSA or New Jersey State labor law.

---

[8] As previously mentioned, there is no indication that the discovery sought would significantly alter in this analysis.
[9] It follows that Plaintiff's claim for overtime is moot.

*Motions to Strike, Conditionally Certify Class, and Stay*

Defendants filed two separate motions to strike two sets of supplemental authority filed by Plaintiff on April 25, 2014[10] and July 31, 2014.[11] "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Generally, if pertinent and significant authorities come to a party's attention after the party's brief has been filed, the party may advise the court of the relevant authority through a Notice of Supplemental Authority; however, a Notice of Supplemental Authority should not advance new arguments that were absent from the movant's complaint. *See Beazer East, Inc. v. Mead Corp.*, 525 F. 3d 255 (3d Cir. 2008) (citing Fed. R. App. P. 28 (j)).

While it should be noted that the supplemental authorities submitted were available to Plaintiff and are largely distinguishable, this Court did review the submissions. Additionally, Defendants previously filed a Motion to Stay and to Conditionally Certify. In light of the discussion provided above, these four motions shall be dismissed as moot.

---

[10] This included reference to (1) N.J.S.A. § 34:11-4.1(a), and the following two cases: *Teleki v. Talk Mktg. Enters., Inc.*, 2012 N.J. Super. Unpub. LEXIS 1407 (App. Div. June 19, 2012); and *Mulford v. Computer Leasing, Inc.*, 334 N.J. Super. 385, 393-394 (Law Div. 1999). These references were available to Plaintiff at the time the initial motion papers were filed, but Plaintiff did not discover their existence until after that memorandum was filed. (Pl.'s Reply to Mot. to Strike at 2.) Defendants argued that "Plaintiff [] mischaracterized her submission as a notice of supplemental authority, when it is actually an impermissible sur-reply." (*See* Dkt. No. 26; Defs.' Mem. of Law in Supp. of Mot. to Strike 1-2.)

[11] The supplemental authority filed included the following: *Jochim v. Jean Madeline Educ. Ctr of Cosmetology, Inc., et al.*, No. 13- 6564 (E.D. Penn. filed Nov. 12, 2013); and *Ford, et al. v. Yasuda, et al.*, No. 13-01961 (PSG) (C.D. Cal. filed Oct. 28, 2013). Both cases and/or the procedural posture are distinguishable from the instant matter.

**CONCLUSION**

For the foregoing reasons, this Court **GRANTS** Defendants' Motion for Summary Judgment, **DENIES** the Cross Motion for Time to Conduct Discovery, and **DENIES** Defendants' Motions to Strike, Plaintiff's Motion to Conditionally Certify, and Defendants' Motion to Stay as moot.

s/Susan D. Wigenton, U.S.D.J.

Orig: Clerk
cc: Parties
     Magistrate Judge Mannion